JULIE GUTMAN DICKINSON (SBN 148267)
jgutmandickinson@bushgottlieb.com
LISA C. DEMIDOVICH (SBN 245836)
ldemidovich@bushgottlieb.com
SOPHIE NEWMAN (SBN 353075)
snewman@bushgottlieb.com
BUSH GOTTLIEB, A Law Corporation
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260
Telephone: (818) 973-3200
Facsimile: (818) 973-3201

Attorneys for SAG-AFTRA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DORIAN KINGI, et al.,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, a labor organization and Delaware Corporation; DOES 1 through 20, inclusive,<br><br>　　　　Defendants. | Case No. 2:24-cv-01996-JLS-JC<br><br>**DEFENDANT SAG-AFTRA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE CONSOLIDATED FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. Josephine L. Staton<br>Date: July 12, 2024<br>Time: 10:30 AM PST<br>Court Room: 8A |

1152671v2  11840-33010

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................... 1

II.  LEGAL ARGUMENT ................................................................................... 1

    A.   Plaintiffs' Claims Are Time-Barred and Tolling Does Not Apply ................ 1

        1.   The six-month SOL applies even though Plaintiffs did not also sue the employer(s) ................................................................................ 1

        2.   Tolling is not appropriate ................................................................... 3

            (a)   DFRs based on collective bargaining are not tolled because exhaustion of internal remedies is not a filing prerequisite ................................................................................ 3

            (b)   Plaintiffs fail to allege internal grievances could have resulted in the relief sought through the DFR claim ................ 5

            (c)   An unrelated strike occurring two years after the 2021 RTWA went into effect has no bearing on the SOL ................ 5

    B.   Plaintiffs Have Failed to Allege that the Union Caused Their Injuries, or Engaged in Discriminatory, Bad Faith, or Arbitrary Conduct .................... 7

    C.   Plaintiffs' State-Law Claims are Preempted by the DFR and/or Section 301 ................................................................................................... 8

        1.   DFR preemption and 301 preemption are distinct doctrines that may overlap but are triggered in different contexts ........................... 8

        2.   Plaintiffs ignore the application of DFR preemption to their state-law claims and utilizes a misleading overly-limited description of Section 301 preemption ............................................ 10

            (a)   Section 301 applies to labor contracts, not just CBAs ........... 11

            (b)   Because resolution of state-law claims is "substantially dependent" on CBA analysis, the claims are preempted ........ 11

III. CONCLUSION ............................................................................................ 13

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

# TABLE OF AUTHORITIES

**Cases**                                                                                                                **Page(s)**

*Acri v. Machinists*, 781 F.2d 1393 (9th Cir. 1986) ..................................................... 4, 6, 7

*Addington v. ALPA*, 606 F.3d 1174 (9th Cir. 2010) ............................................................ 6

*Adkins v. Mireles*, 526 F.3d 531 (9th Cir. 2008) ..................................................... 2, 9, 10, 11

*Alaska Airlines v. Schurke*, 898 F.3d 904 (9th Cir. 2018) ................................................ 12

*Allen v. UFCW*, 43 F.3d 424 (9th Cir. 1994) ................................................................... 6, 7

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985) ................................................ 2, 9, 12

*Armendariz v. Stremicks Heritage Foods*, No. 8:20-cv-00454-JLS, 2020 U.S.
    Dist. LEXIS 184495 (C.D. Cal. Aug. 7, 2020) ................................................................ 2

*Beriault v. Super Cargoes & Checkers*, 501 F.2d 258 (9th Cir. 1974) .............................. 5

*Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053 (9th Cir. 2007) .......................................... 12

*Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987) ............................................................ 9

*Conley v. IBEW Local 639*, 810 F.2d 913 (9th Cir. 1987) ...................................... 1, 2, 3, 5

*DelCostello v. Teamsters*, 462 U.S. 151 (1983) .............................................................. 1, 2

*DiOrio v. Nat'l Educ. Ass'n*,
    No. 23-246 WES, 2023 U.S. Dist. LEXIS 198656 (D.R.I. Nov. 6, 2023) ................ 1, 8

*Fisher v. SAG-AFTRA*, No. 2:21-cv-05215-CAS, 2022 U.S. Dist. LEXIS
    134693 (C.D. Cal. Jul. 27, 2022) ................................................................... 1, 2, 3, 4, 5

*Flanigan v. Teamsters Local 671*, 942 F.2d 824 (2d Cir. 1991) ........................................ 4

*Ford Motor Co. v. Huffman*, 345 U.S. 330 (1953) ............................................................. 9

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1 (1983) .......................... 9

*Galindo v. Stoody Co.*, 793 F.2d 1502 (9th Cir. 1986) ............................................. 3, 4, 5, 6

*Garcia v. Serv. Emps. Int'l Union*, 993 F.3d. 757 (9th Cir. 2021) .............................. 11, 12

*Guidry v. Marine Eng'rs*, No. C 11-05347 CRB, 2012 U.S. Dist. LEXIS
    25745 (N.D. Cal. Feb. 28, 2012) ................................................................................... 9

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Harris v. Alumax Mill Prods., Inc.*, 897 F.2d 400 (9th Cir. 1990) ............................... 3, 13

*IBEW v. Foust*, 442 U.S. 42 (1979) ............................................................................ 9, 10

*IBEW v. Hechler*, 481 U.S. 851 (1987) ............................................................................ 13

*Madison v. Motion Picture Set Painters*,
    132 F. Supp. 2d 1244 (C.D. Cal. 2000) ....................................................... 3, 9, 10, 11

*McGinn v. Haw. Symphony Orchestra*, No. 23-00415 JMS, 2024 U.S. Dist.
    LEXIS 57600 (D. Haw. Mar. 29, 2024) .................................................................. 10

*Multidistrict Vehicle Air Pollution*, 591 F.2d 68, 73 (9th Cir. 1979) ............................... 7

*Retail Clerks v. Lion Dry Goods, Inc.*, 369 U.S. 17 (1962) .............................................. 11

*Stelling v. IBEW*, 587 F.2d 1379 (9th Cir. 1978) ............................................................... 4

*Stone v. WGA*, 101 F.3d 1312 (9th Cir. 1996) ............................................................... 2, 4

*Teamsters Local 174 v. Trick & Murray, Inc.*, 828 F.2d 1418 (9th Cir. 1987) ................... 2

*Teamsters Local 435*, 317 N.L.R.B. 617 (1995) ................................................................ 2

*United Steelworkers v. Rawson*, 495 U.S. 362 (1990) ....................................................... 9

*Walker v. Boeing Corp.*, 218 F. Supp. 2d 1177 (C.D. Cal. 2002) ...................................... 3

*Wickstrom v. ALPA*,
    No. 23 C 2631, 2023 U.S. Dist. LEXIS 155987 (N.D. Ill. Sep. 5, 2023) ..................... 8

*Williams v. Pac. Mar. Ass'n.*, 617 F.2d 1321 (9th Cir. 1980) ............................................. 4

*Wolfe v. Logan*, No. 2:22-cv-06463-JLS-PD, 2023 U.S. Dist. LEXIS 33085
    (C.D. Cal. Jan. 25, 2023) ............................................................................................ 7

*Wooddell v. IBEW, Local 71*, 502 U.S. 93 (1991) ............................................................ 11

**Statutes**

29 U.S.C. § 185(a) .............................................................................................................. 9

Labor Management Reporting and Disclosure Act ............................................................ 4

LMRA Section 301 ................................................................................ 2, 3, 8, 9, 10, 11, 12, 13

National Labor Relations Act Section 10(b) ....................................................................... 2

NLRA ........................................................................................................................ 2, 9, 12

## I. INTRODUCTION

Nothing raised in Plaintiffs' Opposition Brief warrants denial of SAG-AFTRA's Motion to Dismiss. The Opposition Brief fails to distinguish the numerous DFR lawsuits that have been dismissed when union members timely filed actions over COVID-19 vaccination requirements. If a union agreeing to an actual vaccination *requirement* that led to the employment termination of a *tenured* teacher—in an environment where social distancing among lower-risk young students was feasible and masks could generally be worn—was not a DFR breach, *DiOrio v. Nat'l Educ. Ass'n*, No. 23-246 WES, 2023 U.S. Dist. LEXIS 198656, at *30 (D.R.I. Nov. 6, 2023), then *a fortiori* SAG-AFTRA could not breach the DFR when it allowed producers to choose whether to institute on-set vaccination requirements for *at-will* actors where social distancing and wearing masks among higher-risk older or immunocompromised employees was not possible during filming. Because the pleading deficiencies cannot be cured by amendment, the consolidated First Amended Complaint ("FAC") should be dismissed with prejudice.

## II. LEGAL ARGUMENT

### A. Plaintiffs' Claims Are Time-Barred and Tolling Does Not Apply

DFR claims have a six months statute of limitations ("SOL"), *DelCostello v. Teamsters*, 462 U.S. 151, 163–72 (1983), with tolling limited to where internal exhaustion is required before the lawsuit can be filed. *Conley v. IBEW Local 639*, 810 F.2d 913, 915-16 (9th Cir. 1987); *Fisher v. SAG-AFTRA*, No. 2:21-cv-05215-CAS, 2022 U.S. Dist. LEXIS 134693, at *28 (C.D. Cal. Jul. 27, 2022).

#### 1. The six-month SOL applies even though Plaintiffs did not also sue the employer(s)

Plaintiffs argue that *DelCostello* referred to a "hybrid" case brought against both an employer for violating the collective bargaining agreement ("CBA"), and the union for breaching the duty of fair representation ("DFR"). This factual

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1  difference, however, in no way precludes the application of the six-month SOL. In
2  *DelCostello*, the Supreme Court applied the six-month SOL found in National Labor
3  Relations Act ("NLRA") Section 10(b) because "[e]ven if not all breaches of the
4  [DFR] are unfair labor practices, . . . the family resemblance is undeniable, and
5  indeed there is a substantial overlap. Many [DFR] claims . . . *include allegations of*
6  *discrimination based on membership status or dissident views*." *Id.*; *Teamsters*
7  *Local 174 v. Trick & Murray, Inc.*, 828 F.2d 1418, 1422 (9th Cir. 1987).

8       Plaintiffs' claims regarding the Union's alleged inadequate representation of
9  their interests in not receiving the COVID-19 vaccination bears a "family
10 resemblance" to unfair labor practices ("ULPs") that could be brought against a
11 union under the NLRA. At its core, the FAC alleges a representational issue: their
12 viewpoint on the highly-politicized question of COVID-19 vaccination was
13 overlooked because it was the minority view that did not become memorialized in
14 the collectively-bargained Return-to-Work Agreements ("RTWAs"). Challenging a
15 union's agreement negotiated with an employer can be accomplished via a ULP
16 charge. *See, e.g.*, *Teamsters Local 435*, 317 N.L.R.B. 617, 631 (1995) (holding
17 union's failure to represent members in negotiating contract terms was a ULP).

18      It is "not simply the identity of the parties," but the nature of the claims
19 brought that is significant for the purpose of the SOL. *Conley*, 810 F.2d at 915;
20 *Armendariz v. Stremicks Heritage Foods*, No. 8:20-cv-00454-JLS, 2020 U.S. Dist.
21 LEXIS 184495, at *8 (C.D. Cal. Aug. 7, 2020). The six-month SOL applies even
22 though Plaintiffs have not elected to sue their employer(s) in addition to the Union.
23 *Stone v. WGA*, 101 F.3d 1312, 1314 (9th Cir. 1996); *accord Fisher*, 2022 U.S. Dist.
24 LEXIS 134693, at *26.

25      The same SOL applies where a plaintiff brings both Section 301 and DFR
26 claims. *DelCostello*, 462 U.S. at 155. Because the state-law claims are preempted by
27 the DFR and/or Section 301, they too are barred by the SOL. *Allis-Chalmers Corp.*
28 *v. Lueck*, 471 U.S. 202, 220-21 (1985); *Adkins v. Mireles*, 526 F.3d 531, 538-39 (9th

Cir. 2008) (affirming dismissal with prejudice of state-law claims preempted by the DFR and Section 301); *Madison v. Motion Picture Set Painters*, 132 F. Supp. 2d 1244, 1259-60 (C.D. Cal. 2000) (applying the six-month SOL to DFR and Section 301 preempted claims and dismissing them as time-barred).

### 2. Tolling is not appropriate

Given that Plaintiffs filed their original complaints two years after the alleged DFR breach occurred in July 2021, Plaintiffs focused on tolling theories to keep the suit alive. Tolling of DFR claims, however, is limited to where exhaustion of internal remedies was a prerequisite to filing suit and the remedies sought internally match what is sought in the lawsuit. *Harris v. Alumax Mill Prods., Inc.*, 897 F.2d 400, 404 (9th Cir. 1990); *Galindo v. Stoody Co.*, 793 F.2d 1502, 1510 n.5 (9th Cir. 1986). Here, no exhaustion requirement is pleaded, nor does one exist for DFRs over collective bargaining or for inadequate individual representation with an employer when no grievance was even requested. The strike beginning in July 2023, long after the expiration of the final RTWA, cannot toll an already untimely claim.

### (a) DFRs based on collective bargaining are not tolled because exhaustion of internal remedies is not a filing prerequisite

For DFR claims, tolling is "most appropriate in cases where the plaintiff is *required* to avail himself of an alternate course of action as a precondition to filing suit." *Conley*, 810 F.2d at 915. Where, as here, there is no exhaustion requirement prior to bringing the DFR suit, such as filing a grievance, tolling is not applicable. *Id.*; *Harris*, 897 F.2d at 404; *Walker v. Boeing Corp.*, 218 F. Supp. 2d 1177, 1196 (C.D. Cal. 2002).

In *Fisher*, the plaintiffs sued over the Union's CBA negotiation, arguing the terms were detrimental to members and SAG-AFTRA misled members in ratification. 2022 U.S. Dist. LEXIS 134693, at *14-15. The parties acknowledged the six-month SOL applied to the DFR suit, but disagreed about whether it should

be tolled. *Id.* at *26. Plaintiffs alleged their Labor Management Reporting and Disclosure Act Section 501 demand letter constituted a good-faith effort to address their allegations of misconduct and should therefore toll the DFR SOL until the time plaintiffs learned their attempt to resolve the matter through that process was futile. *Id.* at *27-28. The Court disagreed because there was no requirement to file a demand letter prior to bringing the DFR suit, and therefore, a demand could not toll the DFR's six-month SOL. *Id.* at *30.

DFR claims relating to CBA negotiations and execution are not subject to any exhaustion requirement. *Williams v. Pac. Mar. Ass'n.*. 617 F.2d 1321, 1328 (9th Cir. 1980); *Acri v. Machinists*, 781 F.2d 1393, 1396 n.1 (9th Cir. 1986). Here, Plaintiffs take issue with the Union's negotiation and execution of the RTWAs and/or alleged misrepresentations regarding what was negotiated. Therefore, just as in *Fisher*, there is no exhaustion requirement applicable here. Further, unlike *Fisher*, no facts regarding exhaustion are even alleged. The Opposition's vague allusions to contractual remedies are thus irrelevant because there was no requirement, pleaded or otherwise, that they exhaust any alternative channels prior to bringing the DFR suit. Those vague allusions are insufficient for granting leave to amend.

Plaintiffs' reliance on *Galindo* is misplaced because *Galindo* is a grievance and arbitration-related DFR claim where internal exhaustion is first required before suit, in part because if a plaintiff fails to ask a union to process a grievance, they cannot then "complain that the [u]nion failed to represent them properly." *Flanigan v. Teamsters Local 671*, 942 F.2d 824, 829 (2d Cir. 1991); *Stelling v. IBEW*, 587 F.2d 1379, 1390-91 (9th Cir. 1978). But the same is not true here. There is no allegation that Plaintiffs requested a grievance be filed, nor that the Union mishandled a grievance. Attempts to toll based on *ad hoc* requests for help by a member outside of recognized channels, such as the grievance process, have been rejected by courts. *See Stone*, 101 F.3d at 1315. Instead, the FAC focuses on the Union's actions in collective bargaining. Thus, tolling is not appropriate because

exhausting non-judicial remedies was not a prerequisite to bringing this lawsuit, and Plaintiffs have not alleged that any such remedies existed, nor that they attempted to exhaust them. To toll here would "frustrate the national policy of prompt resolution of labor disputes." *Conley*, 810 F.2d at 916.

### (b) Plaintiffs fail to allege internal grievances could have resulted in the relief sought through the DFR claim

Plaintiffs' reliance on *Galindo* is further misplaced because *Galindo* explicitly states, "this rule, of course, assumes that grievance procedures could result in the relief sought by the employee . . . resort to the grievance process should toll the limitations period only if the grievance is related to the alleged breach of [DFR]." *Galindo*, 793 F.2d at 1510 n.5 (internal citations omitted); *Fisher*, 2022 U.S. Dist. LEXIS 134693, at *29-30 (finding demand letter did not provide basis for tolling because it was not a prerequisite to filing suit and it "'could not result in the relief' that plaintiffs seek on their DFR claim").

Plaintiffs do not allege pursuit of internal grievances or that they otherwise made any good faith efforts to exhaust alternative remedies. The Union, after all, cannot pursue a grievance against itself for entering into the RTWAs. *Beriault v. Super Cargoes & Checkers*, 501 F.2d 258, 266 (9th Cir. 1974). Because any relief Plaintiffs could secure through the abstract contractual remedies they invoke would not remedy the alleged harms Plaintiffs have suffered as a result of the Union's alleged DFR breach, the Court has no basis to toll the SOL.

### (c) An unrelated strike occurring two years after the 2021 RTWA went into effect has no bearing on the SOL

Plaintiffs further allege that they could not have reasonably assessed the extent of their harm or damages during the SAG-AFTRA strike when no union members were allowed to work because no member could adequately identify whether the RTWA caused them harm during the strike. The strike occurred between July 14, 2023, and November 9, 2023, Opp. 6, and was unrelated to the

RTWAs (which had already expired on May 12, 2023), and occurred two years after the 2021 RTWA with the COVID-19 vaccination policy Plaintiffs take issue with went into effect. But where a plaintiff challenges union conduct in the context of contract negotiation and execution, the claim accrues at the latest when "negotiations are complete and a 'final product' has been reached." *Addington v. ALPA*, 606 F.3d 1174, 1182 (9th Cir. 2010). Plaintiffs do not, and cannot, allege the strike prevented them from ascertaining the cause of their lack of work between July 2021, when the 2021 RTWA was entered into, and July 2023, when the strike began. The SOL had already run by the time the strike began.

Even under the rule applicable in non-negotiation and contract-adoption contexts, the SOL "begins to run when an employee knows or should know of the alleged breach of [DFR] by a union." *Galindo*, 793 F.2d at 1509. Plaintiffs allege harm dating back to at least 2021 when they began to allegedly lose work due to their vaccination status. Plaintiffs thus either knew of the RTWA COVID-19 provisions and the Union's alleged breach when their injuries began because such injuries provided actual notice, or they should have known of the alleged breach at that time given their affirmative discovery obligations under *Galindo*. A strike in 2023 has no bearing on the RTWA execution in 2021, nor the Plaintiffs' knowledge arising from their injuries in 2021.

That Plaintiffs may not have been able to assess the "extent of their harm or damages" because of the strike is inconsequential. Opp. 6. In *Allen v. UFCW*, the Ninth Circuit held a claim for DFR breach against a union for allegedly conspiring with an employer to eliminate severance benefits was barred by the six-month SOL because plaintiffs' injuries became fixed at the time the union agreed to cutting benefits even if the plaintiffs' full extent of damage was still uncertain. 43 F.3d 424, 428 (9th Cir. 1994). The "possibility that subsequent events might influence the plaintiffs' ultimate recovery does not 'necessitate a rule postponing the accrual of [DFR] claims.'" *Id.* at 427-28 (quoting *Acri*, 781 F.2d at 1396-97 n.1).

There is a distinction between uncertain damage, which can prevent recovery, and uncertain *extent* of damage, which cannot prevent recovery. *Id.*; *Multidistrict Vehicle Air Pollution*, 591 F.2d 68, 73 (9th Cir. 1979). Even if Plaintiffs did not know the full scope of injury from the RTWA in 2021, the execution of the RTWA started the SOL clock because it was then that their damage became certain.

Lastly, Plaintiffs cite no authority, and the Union could find none, in support of the argument that the SOL should be tolled because of a strike. Even if that were a recognized or valid ground for tolling, the strike took place two years after Plaintiffs' alleged harm began and long after the SOL had already passed. Accordingly, Plaintiffs have done nothing to demonstrate tolling is appropriate under these circumstances. Thus, leave to amend should be denied as futile.

### B.  Plaintiffs Have Failed to Allege that the Union Caused Their Injuries, or Engaged in Discriminatory, Bad Faith, or Arbitrary Conduct

Even if Plaintiffs' claims were not time-barred, Plaintiffs' allegations fail as a matter of law because they fail to allege any facts establishing that any harm suffered by Plaintiffs was caused by the Union's challenged conduct, or any facts raising a reasonable inference of arbitrary, discriminatory, or bad faith conduct by the Union. To state a DFR claim, "plaintiffs must establish a causal relationship between the alleged [conduct] and their injury." *Acri*, 781 F.2d at 1397. Plaintiffs fail to tie the Union's conduct to their lack of work.

Plaintiffs' allegations regarding discrimination by the Union are conclusory. They boil down to a claim that because they are unvaccinated, SAG-AFTRA discriminated against them by permitting employers to adopt vaccination policies. However, contrary to this circular logic, requiring vaccination is not intrinsically discriminatory, nor is vaccination status a protected category. *Wolfe v. Logan*, No. 2:22-cv-06463-JLS-PD, 2023 U.S. Dist. LEXIS 33085, at *19 (C.D. Cal. Jan. 25, 2023); *DiOrio*, 2023 U.S. Dist. LEXIS 198656, at *30. Simply alleging a policy

permitting employers to require vaccination harmed those who wished to remain unvaccinated does not state a claim for discriminatory conduct under the DFR.

Additionally, a DFR claim cannot be based on the Union's failure to prevent discrimination by a third-party employer. For example, in *DiOrio*, the court rejected a DFR claim based on allegations that the union encouraged the school district-employer to terminate tenured teachers if they refused to take the COVID vaccine, failed to file a ULP charge against the school district, and refused to support the plaintiffs in their termination proceedings. *Id.* at *14-19. The court dismissed this action for failure to state a claim, reasoning plaintiffs' allegations were vague and conclusory; mere allegations of failing to sufficiently "support" employees in the manner they desired were inadequate to state a claim without more. *Id.* at *18-22; *Wickstrom v. ALPA*, No. 23 C 2631, 2023 U.S. Dist. LEXIS 155987, at *15-17 (N.D. Ill. Sep. 5, 2023) (dismissing DFR claim based on employer's vaccination requirements where CBA permitted such a policy because failing to challenge an employer vaccine mandate in the manner a member wanted does not alone establish a violation). Plaintiffs do not and cannot allege that absent SAG-AFTRA's entry into the RTWAs, producer-employers would have treated them any differently.

Plaintiffs' conclusory allegations of discriminatory, arbitrary, or bad faith conduct are insufficient. Plaintiffs fail to plead a DFR breach or that the Union's conduct caused their injuries where, as here, third-party employers made the decisions to utilize vaccination requirements, and whether or not to hire Plaintiffs.

### C. Plaintiffs' State-Law Claims are Preempted by the DFR and/or Section 301

In their opposition, Plaintiffs allege their claims are not preempted by the DFR but then solely rely on an articulation of preemption as applicable under LMRA Section 301. In doing so, they obfuscate the distinction between the two, and then apply an overly-restrictive definition of Section 301.

#### 1. DFR preemption and 301 preemption are distinct doctrines

**that may overlap but are triggered in different contexts**

Any duties owed by the Union to Plaintiffs—employees it represents for collective bargaining and contract enforcement purposes—are governed by the DFR derived from the NLRA and the CBAs for which Defendant is the exclusive bargaining representative. *Ford Motor Co. v. Huffman*, 345 U.S. 330, 336-38 (1953). A state-law cause of action that takes issue with a union's performance of its role as collective bargaining representative is preempted by the federal DFR. *United Steelworkers v. Rawson*, 495 U.S. 362, 374-75 (1990); *Adkins*, 526 F.3d at 540-42. The focus is on the union's representational conduct and duties derived from its status as exclusive collective bargaining representative. *See Adkins*, 526 F.3d at 540; *Rawson*, 495 U.S. at 373 (explaining the DFR "is a matter of status rather than contract"); *Madison*, 132 F. Supp. 2d at 1257 (explaining to assess DFR preemption "the court must look to the conduct at the heart of the controversy").

Section 301, on the other hand, grants federal courts jurisdiction over "[s]uits for violations of contracts between an employer and a labor organization . . . ." 29 U.S.C. § 185(a); *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 23 (1983). Herein, Section 301 governs claims founded directly on rights created by labor contracts, and those "substantially dependent on analysis of a [labor contract]." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 395 (1987).

DFR preemption is not the same as Section 301 preemption. DFR preemption focuses on the union's status as exclusive representative and its performance of the statutory duties that status necessitates. *IBEW v. Foust*, 442 U.S. 42, 47 (1979); *Rawson*, 495 U.S. at 374, *Madison*, 132 F. Supp. 3d at 1257. Section 301 focuses on the violation and interpretation of labor contracts. *See Lueck*, 471 U.S. at 211; *Caterpillar*, 482 U.S. at 395. These forms of preemption should both be assessed when a plaintiff raises state-law claims that require labor contract analysis, or challenge a union's representational conduct. *Adkins*, 526 F.3d at 538-42; *Guidry v. Marine Eng'rs*, No. C 11-05347 CRB, 2012 U.S. Dist. LEXIS 25745, at *7-8 (N.D.

Cal. Feb. 28, 2012).[1]

### 2. Plaintiffs ignore the application of DFR preemption to their state-law claims and utilizes a misleading overly-limited description of Section 301 preemption

Instead of meaningfully grappling with this distinction, Plaintiffs simply ignore DFR preemption, thereby failing to argue DFR preemption should not apply. But because the underlying conduct Plaintiffs allege brought about their state-law claims—negotiating, entering into, and implementing the RTWAs—is purely representational activity, any state-law claim premised on that conduct is preempted by the DFR. *Foust*, 442 U.S. at 47; *Adkins*, 526 F.3d at 541; *McGinn v. Haw. Symphony Orchestra,* No. 23-00415 JMS, 2024 U.S. Dist. LEXIS 57600, at *8, *24-26 (D. Haw. Mar. 29, 2024). Plaintiffs' state-law claims are "inextricably linked" to the Union's performance of duties owed in its capacity as collective bargaining representative, and accordingly, they are all preempted by the DFR. *Adkins*, 526 F.3d at 541.

Through their discussion of the "artful pleading" doctrine, Plaintiffs again confuse the issue. Plaintiffs are correct to identify that artful pleading applies to ensure subject-matter jurisdiction even absent a federal question on the face of the complaint where state-law claims are preempted under federal law. *See, e.g.*, *Madison*, 132 F. Supp. 3d at 1250. But the doctrine is also a mechanism of preemption that can be used to recharacterize state claims as federal claims. Plaintiff's citations to the Motion to Dismiss ("MTD"), Opp. 12:16 n.41, reference

---

[1] Plaintiffs' discussion of *Madison* highlights this distinction. Opp. at 13:12-20. As they explain, the court held plaintiff's claim regarding the disparate impact of the CBA's hiring procedures was not preempted under Section 301 because its resolution did not require CBA interpretation. *Madison*, 132 F. Supp. 3d at 1253. However, the court then held that same claim, properly recognized as a challenge to the Union's failure to negotiate non-discriminatory hiring procedures, *was* preempted by the DFR which "is sufficiently 'broad' that it may encompass claims not preempted by § 301." *Id.* at 1258-59.

discussions of DFR preemption more broadly, not just artful pleading. Artful pleading is one doctrine made possible because of the breadth of the preemptive force of federal labor law, but DFR preemption of state-law claims is in no way limited to jurisdictional questions. For example, in both *Madison* and *Adkins*—cases cited in the sections of the MTD which Plaintiff refer to and upon which are relied therein—the court dismissed the plaintiffs' claims because they implicated the DFR and the union's status as exclusive bargaining representative; thus, the preemptive force of the DFR was not limited to jurisdictional issues. Federal preemption is much more expansive than Plaintiffs imply and applies here to foreclose Plaintiffs' state-law claims.

### (a) Section 301 applies to labor contracts, not just CBAs

Section 301 preemption applies to *labor contracts*, not just CBAs. *Retail Clerks v. Lion Dry Goods, Inc.*, 369 U.S. 17, 25-28 (1962); *Wooddell v. IBEW, Local 71*, 502 U.S. 93, 98-101 (1991) (holding "union constitutions [that] are an important form of contract between labor organizations" are Section 301 contracts); *Garcia v. Serv. Emps. Int'l Union*, 993 F.3d. 757, 763 (9th Cir. 2021). Section 301 applies to more than just the CBA, and Plaintiffs fail to explain how Section 301 does not extend to SAG-AFTRA's Constitution, as occurred with the IBEW Constitution in *Wooddell*, 502 U.S. at 100. And just like the CBA, the RTWAs are the result of collective bargaining between employers and the Union, and thus clearly are also collectively-bargained labor contracts within the scope of Section 301 even if not given the title "CBA." Plaintiffs plainly charge the Union with violating these labor contracts in its breach of contract claim thereby evoking a Section 301 claim, *Wooddell*, 502 U.S. at 102, even if not identifying it as one. FAC ¶ 162-64; *Garcia*, 994 F.3d. at 765.

### (b) Because resolution of state-law claims is "substantially dependent" on CBA analysis, the claims are preempted

A state-law claim implicating a right that exists independently of a labor

contract does not foreclose Section 301 preemption. Rather, the operative question is whether the claim is substantially dependent on an analysis of such a contract. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007); *Garcia*, 993 F.3d at 764-65. State-law claims are preempted when there is a "dispute over the meaning" of labor contract language. *Alaska Airlines v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018). Plaintiffs assert preemption does not apply because the agreements do not need to be interpretated. All state-law causes of action, however, would require interpretation of at least the RTWA.[2]

For the breach of contract and derivative good-faith and fair dealing claims, Plaintiffs expressly allege violation of Section 301 labor contracts (CBA and RTWA); thus those claims are clearly preempted. *Lueck*, 471 U.S. at 211. With regard to the Union's Constitution and Membership Agreement, even if not labor contracts, determining whether they were breached still requires analysis of the RTWA.[3] Plaintiffs acknowledge as much in their opposition, explaining Plaintiffs' state-law claims are dependent on an interpretation of the RTWA vaccination provisions and any Union obligations regarding vaccination exemptions established therein. Opp. at 14:13-16. To understand how the Union's conduct in entering into the RTWA was violative of these other agreements, one has to analyze the RTWA vaccination provision to determine how these terms abridge rights established under the Constitution or Membership Agreement. Therefore, analysis within the meaning of Section 301 is required.

The same is true with regard to Plaintiffs' other state-law claims because determining whether the Union violated state law requires analysis of the terms of

---

[2] "Plaintiffs' remaining state-law claims are preempted by the DFR under the NLRA and/or LMRA Section 301, and thus must also be dismissed." MTD at 15:25-26.

[3] Plaintiff alleges Constitution and Membership Agreement terms they find relevant are those regarding SAG-AFTRA's designation as exclusive representative and promotion of diversity, but they fail to allege how these provisions were violated.

the RTWA that Plaintiffs allege have harmed them—what is it about the policy that is violative of state law? *See, e.g.*, *Harris*, 897 F.2d at 403. Likewise, understanding the scope of the duty owed to Plaintiffs that was allegedly breached and whether the risk was foreseeable—as necessary to make out negligence-based claims—requires analysis of the RTWA and CBA because those contracts establish the Union's obligations to its members. *IBEW v. Hechler*, 481 U.S. 851, 861-62 (1987). Plaintiffs seem to believe these agreements required the Union to intervene in the administration of employer vaccination requirements; the Union disputes this interpretation. These claims thus require analysis of labor contracts.

On top of DFR preemption, Plaintiffs' state-law claims are also preempted under Section 301 because they arise from and/or are dependent on an analysis of labor contracts. DFR preemption and Section 301 preemption are distinct, and even to the extent 301 preemption does not apply, DFR preemption still does. By not addressing DFR preemption, Plaintiffs have conceded DFR preemption's application here.

## III. CONCLUSION

For the foregoing reasons, Defendant SAG-AFTRA respectfully requests that the Court grant its Motion to Dismiss the FAC with prejudice.

DATED: June 28, 2024

JULIE GUTMAN DICKINSON
LISA C. DEMIDOVICH
SOPHIE NEWMAN
BUSH GOTTLIEB, A Law Corporation

By: _____s/ *Sophie Newman*_____
     SOPHIE NEWMAN
Attorneys for SAG-AFTRA

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
### Form CV-141. Certificate of Compliance

**Case Number:** 2:24-cv-01996-JLS-JC

I am the attorney or self-represented party.

This brief contains 4,196 words, excluding the items exempted by Local Civil Rule 11-6.1.

I certify that this brief complies with the word limit of L.R. 11-6.1 and the word limit set by this Court's standing order.

Signature s/ *Sophie Newman*     Date June 28, 2024

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of . My business address is 801 North Brand Boulevard, Suite 950, Glendale, CA 91203-1260.

On June 28, 2024, I served true copies of the following document(s) described as **DEFENDANT SAG-AFTRA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE CONSOLIDATED FIRST AMENDED COMPLAINT** on the interested parties in this action as follows:

Gerard P. Fox                                    *Attorneys for Plaintiffs*
Breyon J. Davis
Gerard Fox Law P.C.
1880 Century Park East, Suite 1410
Los Angeles, CA 90067

Email: gfox@gerardfoxlaw.com
       bdavis@gerardfoxlaw.com

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 28, 2024, at Glendale, California.

_____
Chelsea Mayo

1152671v2  11840-33010

1

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS